IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBIN G. SKAGGS, | ) | CASE NO. 1:12 CV 2311 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action under 42 U.S.C. § § 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Robin G. Skaggs, for disability insurance benefits and supplemental security income.[2] The Commissioner has answered,[3] and filed the transcript of the administrative proceeding.[4] Under my initial[5] and procedural orders,[6] the parties have briefed their

---

[1] The matter was assigned to me for a report and recommendation under Local Rule 72.2 in a non-document order entered September 14, 2012.

[2] ECF # 1.

[3] ECF # 9.

[4] ECF # 10.

[5] ECF # 5.

[6] ECF # 15.

positions,[7] and filed supplemental charts[8] and the fact sheet.[9] The parties participated in a telephonic oral argument.[10]

For the reasons that follow, I will recommend that the decision of the Commissioner not be affirmed and that the matter be remanded for further proceedings.

## Facts

**A.    Decision of the Administrative Law Judge ("ALJ")**

Skaggs, who was born in 1977 and so is classified as a younger individual, has what the ALJ characterized as a "marginal education."[11] He was previously employed as an insulation worker and heavy equipment operator, which are classified as skilled and semi-skilled occupations, respectively.[12] He now lives with his girlfriend and three children, including one from a prior marriage.[13]

---

[7] ECF # 20 (Skaggs's brief); ECF # 21 (Commissioner's brief); ECF # 23 (Skaggs's reply brief).

[8] ECF # 20-1 (Skaggs's charts); ECF # 21-1 (Commissioner's charts).

[9] ECF # 19 (Skaggs's fact sheet).

[10] ECF # 27.

[11] Transcript ("Tr.") at 18.

[12] *Id.*

[13] *Id.* at 14.

Skaggs was in an auto accident in 2007 and claims that even after three surgeries he is disabled as a result of lower back and hip pain associated with that incident.[14] Moreover, he testified that he "has nightmares and mood swings" that are disabling.[15]

The ALJ, whose decision became the final decision of the Commissioner, found at step two that Skaggs had severe impairments consisting of lumbar degenerative disc disease (DDD); status post (s/p) laminectomy and disectomy [sic], depressive disorder, anxiety disorder, and personality disorder.[16] But, at step three, the ALJ concluded that despite Skaggs's contention that his degenerative disc disease met the listing at § 1.04, he did not meet that listing, nor the listing for mental impairments.[17]

Prior to undertaking the step four analysis, the ALJ made the following finding regarding Skaggs's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a limited range of sedentary work as defined in 20CFR 404.1567(a) and 416.967(a), in which he can lift and carry up to 10 pounds occasionally and frequently, it [sic] for up to six hours in an eight hour day, and stand and/or walk for two hours in an eight hour day, except the claimant can only occasionally bend, stoop or crouch and can perform work in which he can alternate sitting and standing periodically. The claimant can perform jobs that require only simple, routine, and repetitive, one and two-step tasks.[18]

---

[14] *See*, *id.* at 13.

[15] *Id.*

[16] *Id.* at 12.

[17] *Id.* at 13-15.

[18] *Id.* at 15.

Based on that residual functional capacity, the ALJ found at step four that Skaggs was incapable of performing his past relevant work as an insulation worker and heavy equipment operator.[19]

Because the limitations imposed by the RFC meant that Skaggs could not perform all or substantially all of the requirements of sedentary work, a vocational expert ("VE") was utilized to determine the extent to which Skaggs's RFC limitations eroded the unskilled sedentary employment base.[20] Based on an answer to a hypothetical question posed to the VE at the hearing setting forth the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Skaggs could perform.[21] The ALJ, therefore, found Skaggs not under a disability.[22]

## B. Issues on judicial review

Skaggs asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Skaggs raises three issues on judicial review:

- Whether the ALJ erred in his assignment of Skaggs' credibility.

- Whether the ALJ erred in his assessment of the medical evidence of record, including the opinions of treating physician Bruce Piszel, M.D. and treating chiropractor William Sopchak, D.C.

---

[19] *Id.* at 18.

[20] *Id.* at 18-19.

[21] *Id.* at 19.

[22] *Id.*

- Whether the residual functional capacity (RFC) assessed by the ALJ is sufficient to accommodate Skaggs' limitations.[23]

Skaggs maintains first that because the ALJ failed to address the factors articulated by the Sixth Circuit in *Felisky v. Bowen*,[24] and then perform the analysis required by the regulations, the "boiler-plate," single reason cited for rejecting his complaints of pain was not valid.[25] In particular, he contends that a detailed examination of the five *Felisky* factors in light of the evidence of record shows that none of those factors support the decision of the ALJ to discount his credibility.[26]

Further, Skaggs argues that the ALJ failed to give good reasons for giving only little weight to the opinion of Bruce Piszel, M.D., a treating physician.[27] Skaggs essentially asserts that the ALJ's decision to minimize the weight accorded to Dr. Piszel's opinion involved the ALJ improperly "playing doctor" to interpret raw medical data from another treating physician so as to find that information inconsistent with Dr. Piszel's opinion.[28] Moreover, Skaggs contends that the ALJ's failure to discuss the opinion of Dr. Sopchak, a chiropractor, is also error, despite the fact that Dr. Sopchak is a non-acceptable medical source.[29]

---

[23] ECF # 20 at 3.

[24] *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994).

[25] ECF # 20 at 5-8.

[26] *Id.* at 8.

[27] *Id.* at 9-10.

[28] *Id.*

[29] *Id.* at 11-12.

Finally, Skaggs states that the hypothetical question posed to the VE purportedly encompassing the mental limitations found in the RFC was deficient for not including speed and pace restrictions.[30] Relying on the Sixth Circuit's holding in *Ealy v. Commissioner of Social Security*,[31] Skaggs contends that because the RFC found his mental limitations resulted in "moderate difficulties" in concentration, persistence, and pace, the hypothetical question needed to more specifically address speed and pace difficulties and not merely state that Skaggs was restricted to simple, routine or repetitive, one or two-step tasks.[32]

## Analysis

**A.     Standards of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

---

[30] *Id.* at 12-14.

[31] *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010).

[32] *Id.*; *see also*, ECF # 23 at 4-5.

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[33]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[34] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[35]

I will review the findings of the ALJ at issue here consistent with that deferential standard. The relevant evidence from the administrative record will be discussed in detail as part of the following analysis.

2.   *Treating physician rule/good reason requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from

---

[33] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[34] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[35] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

-7-

> objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[36]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[37]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[38] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[39]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[40] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[41] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[42] In deciding if such

---

[36] 20 C.F.R. § 404.1527(d)(2).

[37] *Id.*

[38] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[39] *Id.*

[40] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[41] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[42] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[43]

In *Wilson v. Commissioner of Social Security*,[44] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[45] The court noted that the regulation expressly contains a "good reasons" requirement.[46] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[47]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[48] It drew a distinction between a

---

[43] *Id.* at 535.

[44] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[45] *Id.* at 544.

[46] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[47] *Id.* at 546.

[48] *Id.*

regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[49] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[50] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[51]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[52] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[53] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[54] *Blakley v. Commissioner of Social Security*,[55] and *Hensley v. Astrue*.[56]

---

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (2013).

[53] *Id.* at 375-76.

[54] *Rogers*, 486 F.3d at 242.

[55] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[56] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[57] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[58] These factors are expressly set out in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (3)-(6) and §§ 416.927(c)(2)(i)-(ii), (3)-(6).[59] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[60]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[61] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[62] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary

---

[57] *Gayheart*, 710 F.3d at 376.

[58] *Id.*

[59] *Id.*

[60] *Rogers*, 486 F.3d at 242.

[61] *Gayheart*, 710 F.3d at 376.

[62] *Id.*

criteria set out in §§ 1527(c)(i)-(ii), (3)-(6) of the regulations,[63] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[64] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[65]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[66]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[67] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[68] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating

---

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] *Rogers*, 486 F.3d 234 at 242.

[68] *Blakley*, 581 F.3d at 406-07.

physician disagrees with the opinion of a non-treating physician[69] or that objective medical evidence does not support that opinion.[70]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[71] The Commissioner's *post hoc* arguments on judicial review are immaterial.[72]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

---

[69] *Hensley*, 573 F.3d at 266-67.

[70] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[71] *Blakley*, 581 F.3d at 407.

[72] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

- the failure to mention and consider the opinion of a treating source,[73]

- the rejection or discounting of the weight of a treating source without assigning weight,[74]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[75]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[76]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[77] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[78]

The Sixth Circuit in *Blakley*[79] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[80] Specifically, *Blakley* concluded that "even if we were to agree

---

[73] *Blakley*, 581 F.3d at 407-08.

[74] *Id.* at 408.

[75] *Id.*

[76] *Id.* at 409.

[77] *Hensley*, 573 F.3d at 266-67.

[78] *Friend*, 375 F. App'x at 551-52.

[79] *Blakley*, 581 F.3d 399.

[80] *Id*. at 409-10.

that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[81]

In *Cole v. Astrue*,[82] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[83]

**B.     Application of standards**

This case provides a concrete reason for why the Sixth Circuit requires the specific analysis and articulation it does in applying the treating physician rule.

Here, the Commissioner at the oral argument readily conceded that the ALJ did not perform the analysis set forth in *Gayheart* as to the opinion of Dr. Piszel, but argues – as is frequently the case – that the ALJ did discuss all the elements of each step of the *Gayheart* analysis somewhere in the opinion, and thus, when the opinion is read in totality, it conforms to *Gayheart*.

The *Gayheart* analysis at its first step requires that the opinion of a treating source be given controlling weight if (1) it is well-supported by medically acceptable clinical and

---

[81] *Id*. at 410.

[82] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[83] *Id.* at 940.

diagnostic techniques, and (2) not inconsistent with the other substantial evidence in the record.[84] If, after that analysis produces a finding that the opinion cannot be given controlling weight, the next step mandates that some lesser weight be ascribed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which that source's opinion is consistent with the record as a whole and supported by relevant evidence.[85]

Here, in the brief discussion of Dr. Piszel, the ALJ essentially addressed only the second inquiry of the first step – the degree to which Dr. Piszel's opinion was consistent with other substantial evidence such as treatment notes of Dr. Deborah Blades, Skaggs's surgeon who performed back surgery on Skaggs in 2007, 2009, and 2010.[86] It is worth noting initially that following Skaggs's auto accident in March, 2007, he had surgery in:

(1) November, 2007, when Dr. Blades performed a lumbar laminectomy and discectomy at the L4/5 disc and an L5 root compression;

(2) June, 2009, when Dr. Blades again worked at the L4/5 disc that had become reherniated, this time performing a hemilaminectomy with discectomy neuralysis; and

(3) July, 2010, when Dr. Blades performed a lumbar decompression laminectomy redo and right lumbar discectomy.[87]

---

[84] *Gayheart*, 710 F.3d at 376.

[85] *Id.*

[86] Tr. at 13.

[87] *Id.*

In discounting Dr. Piszel's opinion as inconsistent with the evidence, the ALJ found that two MRIs and one x-ray done prior to the third surgery in 2010 showed that Skaggs's "condition was stable."[88] Further, the ALJ cited Dr. Blades's treatment notes from after the first and second surgeries to show that in December, 2008, Skaggs's "terrible pre-op pain had been resolved," and in 2009 that any episodes of pain would respond to medication.[89]

But what the ALJ glaringly did not mention or analyze is Skaggs's third surgery in 2010. If Skaggs's back condition was indeed fully "stable" and his back pain "resolved" or responsive to medication after either the first or second surgeries, as the ALJ found, then there plainly would have been no reason for an additional third surgery. Yet, the fact is that this surgery did take place notwithstanding those notes cited by the ALJ, and that additional surgery was in response to continued complaints of pain.[90]

This need for even further surgery – even after Dr. Blades had noted her belief at the time that Skaggs's back pain issue had been corrected by the earlier surgery – is certainly not inconsistent with Dr. Piszel's opinion that Skaggs suffers from "failed back surgery syndrome resulting in chronic and severe lower pack pain and bilateral lower extremity pain."[91] Nor is it an indictment of Dr. Blades's observations prior to the third surgery that Skaggs was making progress. But the fact that this progress did not continue and that Skaggs

---

[88] *Id.* at 16.

[89] *Id.*

[90] *See*, *id.* at 13.

[91] *Id.*

-17-

required further surgery is a substantial fact that necessarily must have been addressed by the ALJ before concluding that the earlier, optimistic reports were the final word on Skaggs's condition.

In sum, the reasons given by the ALJ to this initial level of *Gayheart* inquiry, which do not consider the third surgery, do not constitute good reasons for refusing to give Dr. Piszel's opinion controlling weight.

In addition, this analysis, as noted, only goes to the second inquiry of the first step of *Gayheart*. Contrary to the Commissioner's contention, nowhere in this opinion does the ALJ discuss the length, frequency, nature, and extent of Dr. Piszel's treating relationship with Skaggs, nor does the opinion analyze how Dr. Piszel's specialty – orthopaedics – enhances or detracts from his opinion in this case. As such, the opinion does not contain even the fragmented analysis of these essential issues which, as *Gayheart* makes clear, must be discussed by an ALJ in order to properly overcome the presumptive weight attaching to the opinion of a treating source.

In short, this is not a situation where the ALJ within the four corners of the opinion has in some fashion or form adequately performed the required analysis before assigning less than controlling weight to the opinion of a treating source. Thus, on this basis alone, I recommend finding that the decision of the Commissioner is not supported by substantial evidence and that the matter, therefore, must be remanded for further proceedings.

That said, I further note that on remand the issues of Skaggs's credibility as to pain and the limitations of the RFC concerning concentration, persistence, and pace be

reconsidered if the opinion of Dr. Piszel concerning failed back surgery syndrome is accorded significant weight.

## Conclusion

For the reasons stated above, I recommend finding that substantial evidence does not supports the finding of the Commissioner that Skaggs had no disability. Accordingly, I recommend that the decision of the Commissioner denying Skaggs disability insurance benefits and supplemental security income be reversed and the matter remanded for further administrative proceedings as detailed here.

Dated: December 9, 2013            s/ William H. Baughman, Jr.
                                   United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[92]

---

[92] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).